**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SHERRI LYNN GALATI,** | : | **Civil No. 1:25-CV-968** |
| | : | |
| **Plaintiff,** | : | **(Judge Mehalchick)** |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO,** | : | |
| **Commissioner of Social Security** | : | |
| | : | |
| **Defendant.** | : | |

## REPORT AND RECOMMENDATION

### I. Introduction

Sherri Lynn Galati applied for disability benefits on May 9, 2022, alleging that she was totally disabled beginning on April 8, 2021. (Tr. 17). Yet, for a significant length of time during this period of claimed disability, Galati was employed and engaged in substantial gainful activity. (Tr. 19-20). On these facts, after examining Galati's activities of daily living, considering her clinical history and evaluating the greater number of persuasive medical opinions, the Administrative Law Judge (ALJ) concluded that Galati's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and

other evidence in the record." (Tr. 24). The ALJ then fashioned a highly restrictive RFC for Galati which limited her to:

> [J]obs, that would take no more than 30 days of training to learn with a specific vocational preparation level of two (SVP 2), which are generally classified as unskilled. She can understand, remember and carry out simple instructions. She can perform simple, routine and repetitive tasks. Additionally, the claimant can perform jobs that would be considered "low stress" in that they would involve only occasional, simple decision making, and only occasional, gradual changes in the work duties and work setting.

(Tr. 23).

Even within the confines of this RFC, the ALJ found that there were jobs Galati could perform and denied her disability claim. (Tr. 28-29). Galati—who worked during the period of her claimed disability—now challenges this decision raising a single, narrow claim of error. According to the plaintiff, the ALJ neglected to point to any genuine inconsistencies between her subjective allegations and the other evidence in this record. (Doc. 13, at 3).

We disagree.

In considering this argument, we are enjoined to apply a deferential standard of review, a standard of review which simply asks whether there is "substantial evidence" supporting the ALJ's determination. With respect to this legal guidepost, as the Supreme Court has explained:

> he phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 587 U.S. 97, 102–03, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019). In the instant case, after an independent review of the record, and mindful of the fact that substantial evidence "means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" id., we find that substantial evidence supported the ALJ's symptom evaluation. Therefore, for the reasons set forth below, we recommend that the Court affirm the decision of the Commissioner.

## II. Statement of Facts and of the Case

On May 9, 2022, Sherri Galati filed for a period of disability and disability insurance benefits along with supplemental security income pursuant to Titles II and

XVI of the Social Security Act. In both applications, Galati alleged disability beginning April 8, 2021. (Tr. 17). Galati's principal medical impairments were emotional and consisted of depressive disorder and a generalized anxiety disorder. (Tr. 20). Galati was born on November 12, 1970, and was 50 years old on the alleged disability onset date, which is defined as an individual closely approaching advanced age under the Commissioner's regulations. (Tr. 27). Galati had a high school education and prior employment as a customer service representative. (Tr. 45-46).

**A. Galati's Activities of Daily Living.**

At the March 19, 2024, administrative hearing conducted in this case, Galati described her activities of daily living. According to the plaintiff, she had a driver's license and drove short distances occasionally. (Tr. 45). Galati also stated that she was able to care for a pet, prepare simple meals, use social media and watch television. (Tr. 50-51).

Most remarkably, Galati explained that, at the time of the hearing, she was employed. (Tr. 46). Further she acknowledged engaging in substantial gainful activity during 2023, during the period of her claimed disability. (Id.) In fact, the ALJ later found that the record "reflects that the claimant had earnings of $5,058 in the third quarter of 2023 and $8044 in the fourth quarter of 2023." (Tr. 20).

### B. Galati's Clinical Record

With respect to these impairments, the ALJ who decided this case aptly summarized Galati's clinical history in the following terms:

> Treatment records show that the claimant was diagnosed with anxiety for which she was treating with medication prescribed by her primary care provider. On April 8, 2021, the claimant's primary care provider noted the claimant's anxiety was severe and she could not work and had to see a therapist (Exhibit 1F/22). The next month, the claimant complained to her primary care provider about her anxiety. She noted losing sleep and being nauseous and associated same with anxiety. Her primary care doctor reported that hopefully the claimant would see a therapist soon for same (Exhibit 1F/20). Moving forward, the claimant continued to see her primary care provider for anxiety management (Exhibit 1F/7,17).
>
> The claimant did start seeing behavioral health providers. She started going to therapy to work through her depression as well as preoccupation of contracting COVID (Exhibit 5F/2). In the fall of 2021 the claimant's psychiatrist noted the claimant had been diagnosed with depression and anxiety and was not doing very well. The claimant was dealing with the death anniversary of her brother (he died in 1995), she was stressed and not feeling motivated and she was having trouble with her son's girlfriend. Despite the claimant's complaints clinical findings were benign and noted that her mood, affect, thought process, intellect and insight were all normal (Exhibit 3F/7). Thereafter, the claimant's medications were adjusted (Exhibit 3F/8). On follow up the claimant noted doing well and reported that seeing a therapist was helpful to her. She did indicate she still had trouble sleeping so her medication was increased (Exhibit 3F/10). Clinical findings from her psychiatric visits continued to be rather benign (Exhibit 3F/13). In March 2022, clinical findings from another provider continued to note the claimant's mood and affect are normal (Exhibit 2F/8). Additionally, the claimant reported to her psychiatrist that she had been doing well with no ongoing issues, she was compliant with her medications and sleeping well (Exhibit 3F/16).

The claimant did note later in the spring that she was feeling low and having severe depression. Clinical findings described her as slovenly with slowed speech and a blunted mood. Additionally, her intellect was loose but thought process was normal as was her insight (Exhibit 3F/21). The claimant's medications were adjusted, she was encouraged to exercise as well as practice health breathing and mindfulness (Exhibit 3F/22). A lot of the claimant's therapy sessions centered around situational stressors including her fight with Cigna the insurance company for her request for short-term/long term disability (Exhibit 5F/7-13). In May 2022, the claimant was still fighting with Cigna and as a result lost her housing due to inability to pay for a place. She was living with her sister (Exhibit 5F/21). In June the claimant reported to her therapist that she had not seen her psychiatrist in some time because he did not take her insurance and he charged $130 a session, which she did not have. She also noted she was going to seek a job as a cashier because she needed to make money (Exhibit 5F/23).

In August of 2022, the claimant was notified that Cigna reversed their decision and she received her disability payments. She was thankful because she could pay some of her bills (Exhibit 9F/3). The claimant noted she was applying for Section 8 housing and she was no longer applying for bankruptcy. She was happy she was dept [sic] free. The claimant was happy and her therapist described her as refreshed and calm (Exhibit 9F/4). Unfortunately, the claimant's relationship with her son and the situation with her belongings at his house did cause the claimants anxiety and depression symptoms to flare again (Exhibit 9F/9). Despite the claimant's issues, therapy notes indicate that the claimant was still able to spend time with her mother and other family members and celebrated her birthday with them (Exhibit 9F/11). Clinical findings described the claimant was anxious with psychomotor agitation but she was cooperative, polite had good self-care and good eye contact. Moreover, her thought process was goal directed, insight and judgment were good and there were no cognitive deficits (Exhibit 11F/24). The claimant further spent Christmas and New Years with her mother, sister and relatives (Exhibit 9F/16). In meeting with her psychiatrist on follow ups clinical findings were generally benign. Her mood was anxious and depressed but she was cooperative and polite,

> thought process was goal directed, insight and judgment were good and she had no gross cognitive deficits (Exhibit 11F/6,9).
>
> By April 2023 the claimant reported to her psychiatrist that she was taking time out of each day to take deep breaths and care for herself more. She reported not feeling irritable or agitated, he[r] mood was "alright" for the most part and she denied major depressive symptoms. She reported that she planned to go to church more for additional support (Exhibit 13F/1). Clinical findings including her mood and affect were within normal limits (Exhibit 13F/2). The claimant has continued to go to therapy regularly and has been working through her issues including employment, family, health, pets problems, etc. (Exhibit 14F). At hearing, the claimant testified that she has struggled for a while with her mental health but she is in a better place now then she was previously.

(Tr. 24-25).

### C. **Medical Opinion Evidence**

Galati's capacity for meeting the emotional demands of the workplace were evaluated on several occasions during these agency proceedings. These opinions were divided: Two experts opined that Galati could perform some work while one expert stated she could not.

Initially in October of 2022, Dr. Dante Mancini, a state agency expert, opined that Galati was mildly impaired in terms of understanding, remembering, or applying information and experienced moderate impairments interacting with others; Concentrating, persisting, or maintaining pace; and adapting or managing herself. (Tr. 69). Nonetheless the doctor concluded that:

> The claimant is able to carry out very short and simple instructions (i.e., perform one and two step tasks). The claimant is capable of completing tasks within a typical schedule and at a consistent pace. The claimant would be able to maintain regular attendance and be punctual. The claimant would not require special supervision in order to sustain a routine. The claimant can make simple decisions.

(Tr. 71).

On reconsideration in March of 2023, a second state agency expert, Dr. Virginia Martin, concluded that Galati was mildly impaired in terms of understanding, remembering, or applying information; interacting with others; and adapting or managing herself. Dr. Martin found that Galati experienced moderate impairments concentrating, persisting, or maintaining pace. (Tr. 88). The doctor opined that:

> The claimant can make simple decisions and would not require special supervision in order to sustain a routine. The claimant can perform simple, routine, repetitive tasks in a stable environment. The claimant is capable of performing within a schedule and at a consistent pace. The claimant is able to maintain socially appropriate behavior and can perform the personal care functions needed to maintain an acceptable level of personal hygiene. The claimant is capable of asking simple questions and accepting instruction. The claimant is able to interact appropriately with the general public. The claimant is able to get along with others without distracting them. The claimant can exercise appropriate judgment.

(Tr. 92).

There was one countervailing opinion from a treating counselor, Ana Velez, who stated in September of 2021 that Galati was significantly limited or entirely

unable to meet the mental demands of the workplace and would experience excessive absenteeism from work. (Tr. 766-771).

It was against this medical background that Galati's case came to be considered by the ALJ.

### D. The ALJ Hearing and Decision.

A hearing was conducted in this case on March 19, 2024, at which Galati and a vocational expert testified. (Tr. 36-64). Following this hearing, on June 24, 2024, the ALJ issued a decision in Galati's case denying her disability claim. (Tr. 14-29). In that decision, the ALJ first concluded that Galati met the insured status requirements of the Social Security Act through December 31, 2028. (Tr. 19). The ALJ further found that Galati engaged in substantial gainful activity from July 2023 to the date of the decision, but that there had been 12-month periods when she was not employed. (Tr. 19-20).

At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Galati experienced the following severe impairments: depressive disorder and generalized anxiety disorder. (Tr. 20). At Step 3, the ALJ determined that Galati did not have an impairment or combination of impairments that met or medically equaled the severity of one of the disability listing impairments. (Tr. 21-

22). With respect to Galati's emotional impairments, the ALJ discussed the severity of these impairments, explaining that:

> In understanding, remembering or applying information, the claimant has a mild limitation. The claimant reported that she had a hard time remembering things, she could not make decisions or solve significant problems (Exhibit 2E/1,8). The claimant said she had difficulty and often needs to have instructions repeated to her numerous times. She also reported trouble understanding (Exhibit 2E/6). The claimant further reported that she needed reminders to take her medication (Exhibit 2E/3). However, the claimant reported that she can generally take care of her activities of daily living and she reported that she is able to take care of her dog (Exhibit 2E/2). She reported that she can prepare food for herself and while it takes her longer to do things she is still able to accomplish chores (Exhibit 2E/3). The claimant reported that with her emotional support dog she goes out to where she needs to, including stores and she is able to drive short distances. The claimant reported that when she does not shop in stores she is able to get things she needs via telephone or computer (Exhibit 2E/4). The claimant reported that she is able to handle her personal finances and can count change when she needs to (Exhibit 2E/4). To pass time during the day, the claimant spends time watching television and playing with her dog (Exhibit 2E/5). At hearing, the claimant testified that she currently works a data entry job for Chewy and she has been able to maintain same since July of 2023. In addition, while treatment records show the claimant's mood and affect have fluctuated, in general her thought process has been described as goal directed and normal, insight and judgment were normal/good, intellect was normal and she was described as having no cognitive deficits.
>
> In interacting with others, the claimant has a mild limitation. The claimant reported that she has a hard time getting along with family, friends and neighbors due to her depression and anxiety. She noted that she is not as social or attentive as she would like to be and that can bother others (Exhibit 2E/6). She testified that in general she tried to stay at home and avoid people. However, the claimant reported that she does spend time with others. She talks to others on the telephone and

family members including her son will come visit her regularly (Exhibit 2E/5). She testified that she also utilizes Facebook. The claimant reported that for the most part she gets along with authority figures and she has never been fired or laid off from a job because of problems getting along with others (Exhibit 2E/7). At hearing, the claimant testified that she is currently employed and with her job interacts with others on a daily basis. In addition, clinical findings generally described the claimant as cooperative and polite with good eye contact (Exhibits 3F,11F and 13F).

With regard to concentrating, persisting or maintaining pace, the claimant has a moderate limitation. The claimant reported that she was often restless and unable to concentrate long enough to make decisions. She reported that she could become disorganized and had a short attention span (Exhibit 2E/1,8). She reported that at most she can pay attention for ten minutes and she is not able to finish what she starts (Exhibit 2E/6). However, the claimant reported that she can generally take care of her activities of daily living and she reported that she is able to take care of her dog (Exhibit 2E/2). She reported that she can prepare food for herself and while it takes her longer to do things she is still able to accomplish chores (Exhibit 2E/3). The claimant reported that with her emotional support dog she goes out to where she needs to, including stores and she is able to drive short distances. The claimant reported that when she does not shop in stores she is able to get things she needs vias telephone or computer (Exhibit 2E/4). The claimant reported that she is able to handle her personal finances and can count change when she needs to (Exhibit 2E/4). To pass time during the day, the claimant spends time watching television and playing with her dog (Exhibit 2E/5). Furthermore, the claimant testified at hearing that she was able to obtain a job in the summer of 2023 and has been able to maintain same through the date of the hearing. In addition, treatment records generally note that the claimant's intellect has been normal and she has no cognitive deficits (Exhibits 3F,11F and 13F).

As for adapting or managing oneself, the claimant has experienced a moderate limitation. The claimant reported that she is able to handle personal care (Exhibit 2E and Hearing Testimony). Furthermore, examination showed generally the claimant presented with good self-

> care and appeared her age (Exhibits 3F,11F and 13F). Emotionally, the claimant reported and testified that she does not handle stress well nor does she handle changes in routine as she reported it makes her anxious and depressed (Exhibit 2E/7). However, the claimant reported that she can go to the store without issues and interacts daily with others. Moreover, she reported that she cares for emotional support dog and usually has no problems in doing so. The claimant also started working a full time job in the summer of 2023 and has been able to maintain same. In addition, examinations showed that while the claimant's mood and affect tended to fluctuate, her thought process was generally normal, intellect was normal, she was described as having no cognitive deficits and both her insight and judgment were described as good/normal (Exhibits 3F,11F and 13F).

(Tr. 21-22).

Between Steps 3 and 4, the ALJ then fashioned a residual functional capacity ("RFC") for the plaintiff which considered all of her impairments as reflected in the medical record, and found that:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can perform jobs, that would take no more than 30 days of training to learn with a specific vocational preparation level of two (SVP 2), which are generally classified as unskilled. She can understand, remember and carry out simple instructions. She can perform simple, routine and repetitive tasks. Additionally, the claimant can perform jobs that would be considered "low stress" in that they would involve only occasional, simple decision making, and only occasional, gradual changes in the work duties and work setting.

(Tr. 23).

In reaching this carefully calibrated mental RFC, the ALJ canvassed Galati's medical history; her activities of daily living, including her employment during the period of claimed disability; and the medical opinions. (Tr. 23-27). Having made these findings, the ALJ concluded that Galati could not return to her past work but could perform other jobs that existed in significant numbers in the national economy. (Tr. 27-28). Accordingly, the ALJ concluded that Galati had not met the stringent standard of disability set by law and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Galati advances a single narrow claim, arguing that the ALJ erred in evaluating the severity of her symptoms and provided an inadequate explanation of this symptom evaluation. Upon consideration, with our review cabined by a highly deferential standard of review, we find that substantial evidence supported the ALJ's findings that these impairments were not fully disabling. Accordingly, we recommend that the Court affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the

record. See 42 U.S.C. § 405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has recently underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency

> factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019).

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D.Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal

matters is plenary); Ficca, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions flow from this deferential standard of review. First, when conducting this review, "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford, 399 F.3d at 552). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather, our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice, ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In our view, when formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe

physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of

the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a

physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if

it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

The ALJ's disability determination must also meet certain basic substantive requisites. Most significant among these legal benchmarks is a requirement that the ALJ adequately explain the legal and factual basis for this disability determination. Thus, in order to facilitate review of the decision under the substantial evidence standard, the ALJ's decision must be accompanied by "a clear and satisfactory

explication of the basis on which it rests." Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981). Conflicts in the evidence must be resolved and the ALJ must indicate which evidence was accepted, which evidence was rejected, and the reasons for rejecting certain evidence. Id. at 706-07. In addition, "[t]he ALJ must indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 433 (3d Cir. 1999).

### C. Legal Benchmarks for the ALJ's Assessment of a Claimant's Alleged Symptoms

The interplay between the deferential substantive standard of review that governs Social Security appeals, and the requirement that courts carefully assess whether an ALJ has met the standards of articulation required by law, is also illustrated by those cases which consider analysis of a claimant's reported pain. When evaluating lay testimony regarding a claimant's reported degree of pain and disability, we are reminded that:

> [T]he ALJ must necessarily make certain credibility determinations, and this Court defers to the ALJ's assessment of credibility. See Diaz v. Comm'r, 577 F.3d 500, 506 (3d Cir.2009) ("In determining whether there is substantial evidence to support an administrative law judge's decision, we owe deference to his evaluation of the evidence [and] assessment of the credibility of witnesses...."). However, the ALJ must specifically identify and explain what evidence he found not credible and why he found it not credible. Adorno v. Shalala, 40 F.3d 43, 48 (3d Cir.1994) (citing Stewart v. Sec'y of Health, Education and Welfare, 714 F.2d 287, 290 (3d Cir.1983)); see also Stout v. Comm'r, 454 F.3d 1050, 1054 (9th Cir.2006) (stating that an ALJ is required to provide

> "specific reasons for rejecting lay testimony"). An ALJ cannot reject evidence for an incorrect or unsupported reason. Ray v. Astrue, 649 F.Supp.2d 391, 402 (E.D.Pa.2009) (quoting Mason v. Shalala, 994 F.2d 1058, 1066 (3d Cir.1993)).

Zirnsak v. Colvin, 777 F.3d 607, 612–13 (3d Cir. 2014).

Yet, it is also clear that:

> Great weight is given to a claimant's subjective testimony only when it is supported by competent medical evidence. Dobrowolsky v. Califano, 606 F.2d 403, 409 (3d Cir. 1979); accord Snedeker v. Comm'r of Soc. Sec., 244 Fed.Appx. 470, 474 (3d Cir. 2007). An ALJ may reject a claimant's subjective testimony that is not found credible so long as there is an explanation for the rejection of the testimony. Social Security Ruling ("SSR") 96–7p; Schaudeck v. Comm'r of Social Security, 181 F.3d 429, 433 (3d Cir. 1999). Where an ALJ finds that there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce the individual's pain or other symptoms, however, the severity of which is not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

McKean v. Colvin, 150 F. Supp. 3d 406, 415–16 (M.D. Pa. 2015)(footnotes omitted). Thus, we are instructed to review an ALJ's evaluation of a claimant's subjective reports of pain under a standard of review which is deferential with respect to the ALJ's well-articulated findings, but imposes a duty of clear articulation upon the ALJ so that we may conduct meaningful review of the ALJ's conclusions.

In the same fashion that medical opinion evidence is evaluated, the Social Security Rulings and Regulations provide a framework under which the severity of a claimant's reported symptoms are to be considered. 20 C.F.R. §§ 404.1529, 416.929; SSR 16–3p. It is important to note that though the "statements of the individual concerning his or her symptoms must be carefully considered, the ALJ is not required to credit them." Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d. Cir. 2011) (referencing 20 C.F.R. §404.1529(a) ("statements about your pain or other symptoms will not alone establish that you are disabled."). It is well-settled in the Third Circuit that "[a]llegations of pain and other subjective symptoms must be supported by objective medical evidence." Hantraft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (referring to 20 C.F.R. §404.1529). When evaluating a claimant's symptoms, the ALJ must follow a two-step process in which the ALJ resolves whether a medically determinable impairment could be the cause of the symptoms alleged by the claimant, and subsequently must evaluate the alleged symptoms in consideration of the record as a whole. SSR 16-3p.

First, symptoms, such as pain or fatigue, will only be considered to affect a claimant's ability to perform work activities if such symptoms result from an underlying physical or mental impairment that has been demonstrated to exist by medical signs or laboratory findings. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR

16–3p. During the second step of this credibility assessment, the ALJ must determine whether the claimant's statements about the intensity, persistence or functionally limiting effects of his or her symptoms are substantiated based on the ALJ's evaluation of the entire case record. 20 C.F.R. § 404.1529(c), 416.929(c); SSR 16–3p. This includes, but is not limited to: medical signs and laboratory findings, diagnosis and other medical opinions provided by treating or examining sources, and other medical sources, as well as information concerning the claimant's symptoms and how they affect his or her ability to work. Id. The Social Security Administration has recognized that individuals may experience their symptoms differently and may be limited by their symptoms to a greater or lesser extent than other individuals with the same medical impairments, signs, and laboratory findings. SSR 16–3p.

Thus, to assist in the evaluation of a claimant's subjective symptoms, the Social Security Regulations identify seven factors which may be relevant to the assessment of the severity or limiting effects of a claimant's impairment based on a claimant's symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). These factors include: activities of daily living; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate his or her symptoms; treatment, other than medication that a claimant has

received for relief; any measures the claimant has used to relieve his or her symptoms; and, any other factors concerning the claimant's functional limitations and restrictions. Id.; see George v. Colvin, No. 4:13–CV–2803, 2014 WL 5449706, at *4 (M.D.Pa. Oct. 24, 2014); Koppenaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1995999, at *9 (M.D. Pa. Apr. 8, 2019), report and recommendation adopted sub nom. Koppenhaver v. Berryhill, No. 3:18-CV-1525, 2019 WL 1992130 (M.D. Pa. May 6, 2019);Martinez v. Colvin, No. 3:14-CV-1090, 2015 WL 5781202, at *8–9 (M.D. Pa. Sept. 30, 2015).

**D. The Commissioner's Decision Should Be Affirmed.**

In the instant case, the plaintiff alleges the ALJ failed to adequately address the severity of her symptoms and did not explain how the evidence supported this symptom evaluation. In considering these arguments, we are mindful that we are not free to substitute our independent assessment of the evidence for the ALJ's determinations. Rather, we must simply ascertain whether the ALJ's decision is supported by substantial evidence, a quantum of proof which is less than a preponderance of the evidence but more than a mere scintilla, Richardson, 402 U.S. at 401, and "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce, 487 U.S. at 565. Judged against these deferential standards of

review, we find that substantial evidence supported the RFC assessment in this case. Therefore, we recommend that the Court affirm this decision.

With respect to Galati's challenge to the symptom evaluation conducted in this case, under the guiding regulations:

> [A]n ALJ must conduct a two-step process in analyzing a claimant's pain or other symptoms. First, the ALJ must determine whether the claimant has "a medically determinable impairment that could reasonably be expected to produce [the claimant's] symptoms, such as pain." 20 C.F.R. § 404.1529(b). Second, when the record shows that the claimant has a "medically determinable impairment(s) that could reasonably be expected to produce [the claimant's] symptoms," the ALJ "must then evaluate the intensity and persistence of [the claimant's] symptoms" to determine how the symptoms limit the claimant's capacity for work. 20 C.F.R. § 404.1529(c)(1). "In evaluating the intensity and persistence" of a claimant's symptoms, the ALJ considers "all of the available evidence" from "medical sources and nonmedical sources" to determine how the symptoms affect the claimant. (Id.).

Stancavage v. Saul, 469 F. Supp. 3d 311, 336–37 (M.D. Pa. 2020).

In this case, the ALJ's evaluation of Galati's symptoms followed this analytical paradigm. The ALJ began by considering all of Galati's medically determinable impairments. The ALJ then analyzed the intensity and persistence of these symptoms by drawing upon all of the available evidence from medical and non-medical sources. On this score, the ALJ aptly noted that several medical opinions supported the view that Galati retained the ability to perform simple tasks. Moreover, the clinical treatment notes did not describe a wholly disabling degree of

impairment over an extended period; rather, they described severe, but situational stressors. Further, Galati's periods of employment and her statements to caregivers that she was seeking work due to financial pressures suggested that she retained the ability to perform some work despite her impairments. These objective benchmarks provided substantial evidence which supported the ALJ's conclusion that: "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 24).

Galati nonetheless insists that this assessment is flawed because the ALJ did not identify with sufficient clarity the disparities between the evidence and Galati's reported symptoms. However, it is well settled that, "[o]nce an ALJ 'articulates at some minimum level her analysis of a particular line of evidence,' then [the ALJ] is not required to provide '[a] written evaluation of every piece of evidence. " Edinger v. Saul, 432 F. Supp. 3d 516, 529 (E.D. Pa. 2020) (quoting Phillips v. Barnhart, 91 F. App'x 775, 780 n.7 (3d Cir. 2004)).

In the instant case, the ALJ correctly cited clinical evidence, medical opinions and the plaintiff's activities of daily living to conclude that she could meet the emotional demands of the workplace. This symptom evaluation, which is firmly rooted in the evidence, is not a form of improper cherry picking; instead, it represents

the essence of the ALJ's task. In sum, while we are sympathetic to the challenges the plaintiff has confronted, at bottom it appears that the plaintiff is requesting that this court re-weigh this evidence. This we may not do. See Chandler, 667 F.3d at 359 (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) ("Courts are not permitted to re-weigh the evidence or impose their own factual determinations"); Gonzalez v. Astrue, 537 F.Supp.2d 644, 657 (D. Del. 2008) ("In determining whether substantial evidence supports the Commissioner's findings, the Court may not undertake a *de novo* review of the Commissioner's decision and may not re-weigh the evidence of the record") (internal citations omitted)).

In closing, the ALJ's assessment of the evidence in this case, while imperfect, ultimately complied with the dictates of the law and was supported by substantial evidence. This is all that the law requires, and all that a claimant can demand in a disability proceeding. Thus, notwithstanding the argument that this evidence might have been viewed in a way which would have also supported a different finding, we are obliged to affirm this ruling once we find that it is "supported by substantial evidence, 'even [where] this court acting *de novo* might have reached a different conclusion.'" Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190–91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)). Accordingly, under the deferential standard of review that applies to appeals of

Social Security disability determinations, we recommend that the Court affirm this decision.

## IV. **Recommendation**

For the foregoing reasons, IT IS RECOMMENDED that the decision of the Commissioner in this case should be affirmed, and the plaintiff's appeal denied.

The parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses, or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of September 2026.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge